SANDI M. COLABIANCHI (SBN 193872)
GORDON REES SCULLY MANSUKHANI, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone:  (415) 986-5900
Facsimile:  (415) 986-8054
Email:  scolabianchi@grsM.com

Attorneys for Chapter 7 Trustee,
Fred Hjelmeset

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| In re Live365, Inc., | ) | CASE NO. 16-51574 SLJ |
|---|---|---|
| Debtor. | ) ) ) ) ) ) ) ) | Chapter 7<br><br>**FINAL FEE APPLICATION OF GORDON REES SCULLY MANSUKHANI, LLP (COUNSEL TO TRUSTEE)**<br><br>Hearing:  To Be Set |

Gordon Rees Scully Mansukhani, LLP, counsel for Fred Hjelmeset, Trustee in Bankruptcy ("Trustee") of the estate of Live365, Inc., submits its Final Fee Application.

**A. Employment and Prior Compensation**

An order was entered on November 8, 2017 authorizing the employment of Gordon Rees Scully Mansukhani, LLP ("G&R") as counsel for the Trustee.  This is G&R's first application for compensation as counsel for the Chapter 7 Trustee.  The time period covered by this application is June 1, 2016 to May 24, 2018.

**B. Work Performed**

   **1.   General Administration**

Applicant reviewed the Debtor's bankruptcy schedules, leases and other documents from the Debtor.  Applicant worked with the Trustee to analyze the Debtor's assets and leases, and determine whether to reject the Debtor's lease.  Applicant discussed the lease and the estate

assets located at the co-location facility used by the Debtor with the landlord. Following the disposition of the estate assets and analysis of the claims of the estate, Applicant prepared a request to pay the administrative expenses for storage of the Debtor's records and personal property remaining in a storage unit and the supporting documents. Applicant also prepared a notice of abandonment of the Debtor's books and records.

For this matter, Applicant spent 5.7 hours and incurred fees totaling $2,565.00.

**2.  Asset Disposition**

The Debtor's primary assets consisted of computer equipment located in a co-location facility, including computers, servers, power strips and other related equipment, and intellectual property, including domain names, patent applications and trademarks. The Trustee worked with the Debtor to evaluate the value of the assets and potential buyers. The Trustee entered into an agreement to sell the domain names and computer equipment, subject to overbid for the purchase price of $16,000. Applicant assisted the Trustee in preparing the agreement and working with the buyer on revisions to the agreement. Applicant also prepared the notice of the proposed sale and the motion.

The Trustee received an overbid for the assets. Applicant worked with the Trustee to set the auction and the terms. Applicant explained the terms of the sale, the bankruptcy process and the auction to the buyer and the over-bidder. An auction was held and the assets were sold for the purchase price of $56,200. An order was entered on July 29, 2016 approving the sale.

Following the sale, the buyer requested clarification on the inclusion of the trademarks in the sale. Applicant prepared a supplemental motion and supporting documents to clarify that the trademarks were to be included in the sale. Applicant also reviewed the transfer documents provided by the buyer to complete the transfers with the entities that registered the intellectual property.

Additional assets included patents, patent applications and receivables. Applicant worked with the Trustee to determine the value of the patents and discussed the assets with potential buyers but no offers were received that would exceed the costs to sell the patents. Applicant prepared and sent letters to account debtors to collect outstanding accounts receivable.

Case: 16-51574    Doc# 97    Filed: 06/01/18    Entered: 06/01/18 15:14:40    Page 2 of 6

Many of the Debtor's remaining accounts receivable were very old by the time of the filing of the petition and were considered uncollectible. Applicant followed up with the account debtors but given the amounts and defenses to the receivables, after discussion with the Trustee, further action was not taken.

For this matter, Applicant spent 31.80 hours and incurred fees totaling $14,310.00.

### 3. Claims Administration

Following the Trustee's review of the claims in the case, the Trustee requested that Applicant assist with objections to the claim filed by the landlord of the Debtor's former premises, as well as the claims filed by Hovanesian & Hovanesian, Sound Exchange and certain claims that appeared to be filed by equity holders. For the landlord's claim, Applicant contacted the landlord's counsel and requested additional information about the security deposit held, the clean up and removal of furniture costs, efforts to mitigate damages and claim to full rent after the Debtor moved from the premises. Applicant worked with the Trustee to address the validity of the various components of the landlord's claim. Applicant also contacted Harvey Bendix to evaluate the storage rent asserted in the claim. After additional discussions with the landlord's counsel, the landlord agreed to reduce its claim to the amount of the security deposit. The Trustee determined based on the information and the documents obtained that the landlord's claim exceeded the security deposit.

Applicant contacted Sound Exchange which filed a proof of claim that was significantly larger than the claim listed in the Debtor's schedules. Sound Exchange provided an audit performed on the Debtor's account which verified the higher amount in the claim.

Applicant also contacted Hovanesian & Hovanesian to address its claim and the payment received by it during the preference period. As discussed further below, the Trustee had demanded return of a payment made to Hovanesian during the preference period but had not received the payment or documents requested in connection with the defense asserted by Hovanesian. Applicant prepared an objection to the proof of claim on the grounds that the claim should be disallowed since the preference payment had not been returned. Hovanesian filed a response to the claim objection asserting that the claim should be allowed and that it had

Case 16-51574    Doc# 97    Filed: 06/01/18    Entered: 06/01/18 15:14:40    Page 3 of 6

Page 3

defenses to the preference claim. Applicant followed up with Hovanesian again and received documents relating to the defenses. An agreement was reached in connection with the preference and the claim was withdrawn as part of the agreement.

Several claims were filed by entities that appeared to be claims for equity interests. Applicant contacted counsel for the entities and requested supporting documents. After no additional documents were provided, Applicant prepared objections to the claims seeking to disallow the claims. No response was filed by the entities and orders have been entered disallowing the claims.

Applicant also prepared objections to claim that appeared to be duplicative and a request to authorize payment due to the Franchise Tax Board.

For this matter, Applicant spent 27.8 hours and incurred fees totaling $11,897.50.

**4.     Avoidance Litigation**

As noted above, Hovanesian & Hovanesian received a payment during the preference period that appeared to be an avoidable transfer. Applicant prepared a letter to Hovanesian seeking return of the payment. Hovanesian responded and asserted various defenses. Applicant requested supporting documents but did not receive information requested by the requested deadline. Applicant followed up with Hovanesian on multiple occasions. When the documents were still not sent even after multiple requests, Applicant filed an objection to Hovanesian's proof of claim in the case. Hovanesian responded to the objection and after further follow up by Applicant, Hovanesian sent supporting documents. Applicant worked with the Trustee to analyze the response and after additional negotiations, an agreement was reached in which Hovanesian agreed to the disallowance of its claim. Applicant prepared an agreement with Hovanesian and after multiple follow up efforts and revisions, the agreement was signed.

An additional payment during the preference period was made to Sheppard Mullin. Applicant prepared a letter to Sheppard Mullin seeking return of the payment. After review of the defenses asserted by Sheppard Mullin and supporting documents provided, and following negotiations with Sheppard Mullin, the Trustee and Sheppard Mullin agreed to a compromise of the preference. Applicant prepared an agreement and worked with Sheppard Mullin on revisions

to the agreement. Applicant prepared a notice of the Hovanesian and the Sheppard Mullin compromises. Applicant also prepared a motion for approval of the compromises and the supporting documents. An order was entered on May 18, 2018 approving the compromises.

For this matter, Applicant spent 27.2 hours and incurred fees totaling $10,740.00.

### 5. Employment and Fee Applications

Applicant prepared the employment documents for West Auctions to sell the assets located at the co-location facility. As noted above, an agreement was reached before the auction to sell the assets to a private buyer. Applicant also prepared its employment documents. Applicant prepared this fee application.

For this matter, Applicant spent 3.9 hours and incurred fees totaling $1,755.00

## C. Billing Summary

The services were provided primarily by Sandi Colabianchi, a partner with G&R. Ms. Colabianchi has over 18 years of experience as an attorney specializing in bankruptcy law. Ms. Colabianchi was also previously a law clerk for the Hon. Marilyn Morgan (retired) at the U.S. Bankruptcy Court in San Jose. During the time period covered by this application, Ms. Colabianchi billed at a rate of $450.00. Services were also provided by Miguel Saldana. Mr. Saldana was previously a law clerk for the Hon. William Lafferty at the U.S. Bankruptcy Court in Oakland. During the period covered by this application, Mr. Saldana billed at a rate of $250.00. Attached to the Declaration of Sandi M. Colabianchi are authentic copies of Applicant's billing statements.

## D. Preparation of Application

Applicant has limited the time charged to the estate in the preparation of this application to 2.0 hours. At a rate of $450, the fees incurred are less than 5% of the total fees requested in the application.

## E. Conclusion

Applicant spent a total of 96.4 hours during the time period covered by this application and believes that the fees of $41,267.50 and expenses of $491.26 are reasonable. Applicant

**Gordon Rees Scully Mansukhani, LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

requests that the Court approve this final application and payment of fees of $41,267.50 and expenses of $491.26.

Dated: June 1, 2018

GORDON REES SCULLY MANSUKHANI, LLP

By /s/ Sandi M. Colabianchi
Sandi M. Colabianchi
Attorneys for Chapter 7 Trustee, Fred Hjelmeset

**CERTIFICATION BY TRUSTEE**

I, Fred Hjelmeset, Trustee, hereby certify that I have read the above fee application of Gordon Rees Scully Mansukhani, LLP, attorneys to the Trustee, and I have no objections to the fee application or the fees and costs requested therein.

Dated: June 1, 2018

Fred Hjelmeset, Trustee in Bankruptcy